**Henry BROWN, Appellant,**

v.

**The STATE of Texas.**

**No. 2475–01.**

Court of Criminal Appeals of Texas.

Feb. 12, 2003.

Donald F. Killingsworth, Tyler, for Appellant.

Edward J. Marty, Asst. DA, Tyler, Matthew Paul, State's Atty., Austin, for State.

## OPINION

HERVEY, J., delivered the opinion of the Court in which KELLER, P.J., MEYERS, PRICE, WOMACK, JOHNSON, KEASLER, and HOLCOMB, JJ., joined.

The punishment level for aggravated kidnapping is reduced from a first degree

felony (5 to 99 years or life) to a second degree felony (2 to 20 years)[1] if the kidnapper "voluntarily released the victim in a safe place." *See* Section 20.04(d), Texas Penal Code. In this case we decide that the Court of Appeals applied an improper definition of "voluntarily" in deciding that appellant's release of the victim in a safe place was not voluntary.

The evidence showed that appellant stabbed the victim in the neck with a knife and kidnapped her. The seriously injured victim later persuaded appellant to release her at a hospital by promising appellant that she would "tell them [that she] did it." After a jury convicted him of aggravated kidnapping, appellant asked the jury to sentence him as a second degree felon because he voluntarily released the victim in a safe place. The prosecution responded that appellant's release of the victim was not voluntary because the victim "tricked" appellant into releasing her.

> Now, the only time he ever gave her medical treatment—allowed her medical treatment was when she fooled him, when she said, "Okay, I will tell them it was an accident." Does that sound like it was a voluntary release on his part, or was he tricked into it?

> \* \* \* \* \* \*

> This was not a voluntary release in a safe place. He was tricked into releasing her. He was tricked into taking her to the hospital under the pretense that he wouldn't get caught for it, and that is not voluntary.

> \* \* \* \* \* \*

> I submit to you that if somebody fools you into doing something that you wouldn't otherwise do, it's not voluntary. If somebody fools him into doing some-

thing that he wouldn't have otherwise done, it wasn't voluntary.

> And that's exactly what [the victim] did. Desperate to save her own life, she fooled him into taking her to the hospital, 'cause she convinced him she would say it was an accident.

> Do you remember that? Do you remember that testimony? That's not voluntary. He was tricked into doing that. And I'm glad that she was able to fool him and able to do that because it probably saved her life.

> Now, Counsel said it's—this is too simple, too easy. Well, what's too simple and too easy would have been for him, the moment after he stabbed her in the neck, to drive her to [the hospital] which was, what, some two minutes from Mr. Tarry's place of business instead of taking her out in the county for an hour-and-a-half and watching her choke and beg for her life. It would have been too easy to go to [the hospital].

> [Appellant] doesn't get rewarded for protecting himself. And that's exactly what he did when he drove her to that hospital. He was protecting himself. He knew he was going to get caught. Too much blood. Too much stuff.

> He knew he would eventually get caught, and he was protecting himself because [the victim] convinced him she would say it was an accident. And that's what he was doing and nothing else. Please don't be fooled by that. That's all he was doing was protecting [himself].

The prosecution asked the jury to sentence appellant as a first degree felon and to assess a life sentence. The jury found that appellant did not voluntarily release

---

1. Section 12.32, Texas Penal Code, (first degree punishment level); Section 12.33(a), Texas Penal Code, (second degree punishment level).

the victim and sentenced appellant as a first degree felon to 30 years.

On direct appeal, appellant claimed only that the evidence was factually insufficient to support the jury's finding that his release of the victim in a safe place was not voluntary. Relying on former Presiding Judge McCormick's dissenting opinion to this Court's refusal of the State's discretionary review petition in *Teer v. State*, the Court of Appeals rejected this claim. *Brown v. State*, —— S.W.3d ——, —— – ——, slip op. at 3–6 (Tex.App.-Tyler 2001, No. 12–00–00145–CR, delivered November 28, 2001); *Teer v. State*, 923 S.W.2d 11, 12–21 (Tex.Cr.App.1996) (McCormick, P.J., dissenting to refusal of State's discretionary review petition).

The Court of Appeals decided that the term "voluntarily" in Section 20.04(d) had to be construed according to its "broadest possible understanding." *Brown*, slip op. at 4, at ——; *Teer*, 923 S.W.2d at 21 (McCormick, P.J., dissenting) ("voluntary" should be construed according to its "broadest possible definition"). The Court of Appeals construed "voluntary" to mean "the spontaneous product of the actor's free will, uninfluenced by another's persuasion, coercion, or solicitation." *Brown*, slip op. at 5, at —— (internal quotations omitted) adopting verbatim the definition of "voluntary" set out in *Teer*, 923 S.W.2d at 20 (McCormick, P.J., dissenting). Applying this definition of "voluntary," the Court of Appeals rejected appellant's factual sufficiency claim. *Brown*, slip op. at 6, at

—— ("the jury could have reasonably determined that Appellant released [the victim] because of her promise to conceal the circumstances of her injury and not out of concern for her condition"). We exercised our discretionary review authority to address the Court of Appeals' construction of the term "voluntarily" in Section 20.04(d).[2]

■ We normally construe a statute according to its plain textual meaning without resort to extratextual sources. *See Boykin v. State*, 818 S.W.2d 782, 785 (Tex.Cr.App.1991). We will, however, also resort to extratextual sources to construe a statute if we decide that the statute is ambiguous or that construing the statute according to its plain textual meaning will lead to "absurd consequences." *See Jordan v. State*, 36 S.W.3d 871, 873 (Tex.Cr. App.2001). These general rules of statutory construction are aids to effect our overriding constitutional duty to effectuate what the Legislature intended when it enacted the statute. *See Boykin*, 818 S.W.2d at 785.

■ We decide that the legislatively undefined term "voluntarily" in Section 20.04(d) is ambiguous primarily because it is susceptible to different meanings, some of which would support holding that appellant's release of the victim was voluntary and some of which would support a contrary decision. *See Teer*, 923 S.W.2d at 19–20 (McCormick, P.J., dissenting) (discussing various dictionary definitions of "voluntarily").[3] We will, therefore, also

2. We also note a possible conflict among some of the intermediate appellate courts on this issue. *Compare, e.g., Teer v. State*, 895 S.W.2d 845, 848–50 (Tex.App.-Waco 1995, pet. ref'd), *with, Wiley v. State*, 820 S.W.2d 401, 411 (Tex.App.-Beaumont 1991, no pet.).

3. These definitions include: "proceeding from the will or from one's own free choice or consent" or "done by design or intention" or "having power of free choice" or "uncon-

strained by interference" or "acting or done of one's own free will without valuable consideration or legal obligation" or "unimpelled by another's influence" or "resulting from free choice, without compulsion or solicitation" or "without valuable consideration" or "acting, serving, or done willingly and without constraint or expectation of reward" or "acting, done, or given etc. of one's own free will, not under compulsion" or "working or

resort to extratextual sources to construe "voluntarily" in Section 20.04(d).

■ The "plain" language of Section 20.04(d) obviously is intended to provide an incentive to kidnappers to release their kidnap victims. *See Jordan*, 36 S.W.3d at 873 (in construing an ambiguous statute, courts may consider "object sought to be obtained"); *Brown v. State*, 943 S.W.2d 35, 36 (Tex.Cr.App.1997) (starting point in analyzing the meaning of any statute is the language of the statute itself). An examination of the legislative history of Section 20.04(d)[4] reveals that prior to 1931, Texas law did not reduce the punishment of a kidnapper who released his kidnap victim. *See* Texas Penal Code, former Article 1177 (1927) ("[o]ne guilty of kidnapping shall be confined in the penitentiary not less than two nor more than five years or be fined not exceeding two thousand dollars"); Texas Penal Code, former Article 1178 (1927) (if kidnap victim is actually removed from the state, then "the punishment shall be imprisonment in the penitentiary not less than two nor more than ten years").

In 1931, the 42nd Legislature made kidnapping for extortion or ransom punishable "by death or confinement in the penitentiary for any term of years not less than five" unless the kidnapper "returned" the victim "without serious bodily injury having been inflicted" in which case the punishment was "confinement in the State Penitentiary for any term of years not less than five." *See* Acts 1931, 42nd Leg., p. 12, ch. 12, H.B. 244 codified as former Texas Penal Code, Article 1177a.[5] In 1933, however, the 43rd Legislature determined that this reduced punishment for a kidnapper who returned the kidnap victim "without serious bodily injury" was "wholly inadequate to deter persons from committing the crime of kidnapping" for extortion or ransom. *See* Acts 1933, 43rd Leg., p. 51, ch. 17, S.B. 36. The 43rd Legislature repealed this portion of the statute and kept the original punishment from the 1931 statute of "death or confinement in the penitentiary for any term of years not less than five" for kidnapping for extortion or ransom. *See id.*

The statute remained unchanged until 1973 when the 63rd Legislature enacted the aggravated kidnapping statute in Texas Penal Code, Section 20.04. The 63rd Legislature provided that the punishment level for aggravated kidnapping would be reduced from a first degree felony to a second degree felony if the kidnapper "voluntarily releases the victim alive and in a safe place." *See* Acts 1973, 63rd Leg., p. 883, ch. 399, S.B. 34, H.B. 514 codified as former Texas Penal Code, Section 20.04(b), (West 1974).[6] The overriding concern expressed during the legislative hearings and debates in connection with the enactment of former Section 20.04(b) was the meaning of a safe place (e.g., whether releasing a kidnap victim in 20 degree weather or on a railroad track would constitute release in a safe place). These legislative hearings

---

done without payment" or "acting without compulsion or persuasion" or "done without profit, payment, or any valuable consideration."

**4.** *See Jordan*, 36 S.W.3d at 873 (in construing an ambiguous statute, courts may consider any legislative history).

**5.** Under former Article 1177a, appellant would not be eligible for a reduction in pun-

ishment since the evidence shows "serious bodily injury having been inflicted" upon the victim.

**6.** Unlike former Article 1177a, the "plain" language of former Section 20.04(b) would make appellant eligible for a reduction in punishment since the evidence shows that appellant released the seriously injured but alive victim in a safe place.

and debates are silent on the meaning of "voluntarily."[7]

Before its enactment by the 63rd Legislature in 1973, former Section 20.04(b) was originally drafted in the Proposed Penal Code to read "[k]idnapping is a felony of the first degree unless the actor voluntarily releases the victim alive and in a safe place before arraignment, in which event kidnapping is a felony of the second degree."[8] The drafters' comment to this proposed draft was, "[r]eflecting a primary concern for the victim's safety, [the proposed draft of former Section 20.04(b)] provides an incentive for the kidnapper to voluntarily release the victim alive." The only substantive change made by the 63rd Legislature to this original draft was the deletion of the phrase "before arraignment," which deletion only extended the time at which the incentive to release the victim was made available.[9]

The 1973 Practice Commentary to Section 20.04 states that former Section 20.04(b) was patterned after Section 212.1 of the Model Penal Code. *See* Practice Commentary to Section 20.04 (West 1974); Model Penal Code, Section 212.1, pages

208–37, 210 (Official 1962 Draft and Revised Comments) (The American Law Institute 1980) (reducing punishment if kidnapper "voluntarily releases the victim alive and in a safe place prior to trial"). The 1973 Practice Commentary to Section 20.04 also states that former Section 20.04(b) reflected "the Model code's overriding concern for the victim's safety" because like "prior art. 1177a before its amendment in 1933, [former] Section 20.04(b) encourages the victim's safe return by reducing the penalty one grade if he is released alive and in a safe place." *See* Practice Commentary to Section 20.04 (West 1974). The 1973 Practice Commentary is silent on the meaning of the term "voluntarily." The Comments to the Model Penal Code state that a "voluntary" release means "that rescue by the police or escape by the victim will not operate in mitigation of the first-degree penalties." *See* Comments to Model Penal Code, Section 212.1, at pages 233–34.

■ The 73rd Legislature amended Section 20.04 in 1993. The legislative record of these 1993 amendments is again silent on the meaning of "voluntarily."[10] The

7. Hearings on SB 34 before the Senate Criminal Jurisprudence Subcommittee, 63rd Leg., R.S., on Feb. 20, 1973.

Hearings on HB 514 (companion bill to SB 34) before the House Subcommittee on Criminal Jurisprudence, 63rd Leg., R.S., on Mar. 5, 1973.

Hearings on SB 34 before the Senate Jurisprudence Committee, 63rd Leg., R.S., on May 8, 1973.

Senate hearings on SB 34, 63rd Leg. R.S., on May 16 and 24, 1973.

House hearings on SB 34, 63rd Leg. R.S., on May 18, 21, and 23, 1973.

8. *See Texas Penal Code: A Proposed Revision* 153 (Final Draft, West 1970); *Texas Penal Code Revision Project*, Manuscript Review, Title 4 (Inchoate Offenses), Draft 1 at 15, (State Bar of Texas, Committee on Revision of the Penal Code, Texas Penal Code Revision Project, August 7, 1970).

9. *See Aguirre v. State*, 22 S.W.3d 463, 471 (Tex.Cr.App.1999) (when "subsections with which we are concerned ... were enacted without substantive change, the drafters' comments are the most important expression of the legislative history of those subsections").

10. Hearings on SB 1067 before the Senate Criminal Jurisprudence Subcommittee, 73rd Leg., R.S., on Apr. 14 and 15, 1993.

Hearings on SB 1067 before the Committee of the Whole Senate, 73rd Leg., R.S., on Apr. 20, 1993.

Senate hearings on SB 1067, 73rd Leg., R.S., on Apr. 22, 1993.

Hearings on SB 1067 before the House Criminal Jurisprudence Committee, 73rd Leg., R.S., on Apr. 30, 1993.

House hearings on SB 1067, 73rd Leg., R.S., on May 6 and 8, 1993.

1993 amendments to Section 20.04 made the "voluntary release in a safe place" issue an affirmative defense that a defendant has the burden to prove at the punishment stage of an aggravated kidnapping prosecution. *See* Acts 1993, 73rd Leg., ch. 900, Section 101 codified in former Section 20.04(c) (permitting a defendant to raise the issue of "whether he voluntarily released the victim in a safe place" and reducing the punishment level for the offense by one grade if the defendant "proves the issue in the affirmative by a preponderance of the evidence"). These 1993 amendments were a response to this Court's decision in *Williams v. State* which had placed the burden on the prosecution under former Section 20.04(b) to prove that the defendant released the victim in an unsafe place when the evidence raised the issue. *See Williams v. State*, 851 S.W.2d 282, 286–87 (Tex.Cr.App.1993). The 1993 amendments to Section 20.04 also changed the language of former Section 20.04(b) that read "voluntarily releases the victim **alive** and in a safe place" to its current form that reads "voluntarily released the victim in a safe place." *See* Acts 1993, 73rd Leg., ch. 900, Section 1.01. (Emphasis supplied).[11]

The legislative history of Section 20.04(d), therefore, is silent on the meaning of the legislatively undefined term

---

**11.** If a defendant seriously injures the victim, the question is raised whether the defendant is eligible for a reduction in punishment. The 1973 Practice Commentary to Section 20.04 states that former Section 20.04(b) reflects "the Model code's overriding concern for the victim's safety" and the "victim's safe return" like "prior art. 1177a" which provided a reduction in punishment if the kidnapper returned the victim "without serious bodily injury having been inflicted." *See* Practice Commentary to Section 20.04 (West 1974). We do not address that question here because we granted discretionary review only on the issue of whether appellant "voluntarily" released the victim.

We note, however, that neither Section 20.04(d) nor former Section 20.04(b) are like former Article 1177a. Unlike former Article 1177a, the "plain" language of Section 20.04(d) makes appellant eligible for a reduction in punishment since the evidence shows that he released the victim in a safe place. *Compare* Footnote 7 (under former Article 1177a, appellant would not be eligible for a reduction in punishment since the evidence shows "serious bodily injury having been inflicted" upon the victim). The legislative history of Section 20.04(d) is also silent on whether a kidnapper who injures his victim is eligible for a reduction in punishment.

Also, since the 63rd Legislature in 1973 used the language "voluntarily releases the victim alive and in a safe place" instead of the "without serious bodily injury" language from former Article 1177a, the 63rd Legislature arguably allowed for a reduction in punishment for a kidnapper like appellant who inflicts serious bodily injury upon his victim but later voluntarily releases her in a safe place. This would also hold true where the victim later dies of her injuries after the kidnapper voluntarily releases her in a safe place.

The Comments to Section 212.1 of the Model Penal Code lend some support to this position:

> This approach seems preferable to those formulations in prior law that authorized extreme penalties unless the victim was "liberated unharmed." [footnote omitted]. In the first place, the mitigation would seem to be triggered even if the victim were rescued over the forcible opposition of the kidnapper. It is undesirable to refer to the moment of liberation without regard to the presence of circumstances that may make subsequent serious harm or death quite likely. More importantly, however, the quoted formula seems to require that no harm whatever shall have been done to the victim, [footnote omitted] which means that once harm has occurred there is little incentive to avoid further injury and even death. Indeed, as one court has noted, the formula can have the perverse effect of encouraging the actor to prolong detention once harm has occurred to give the victim time to recover so that he will be "unharmed" at the moment of liberation. [footnote omitted].

*Id.* at page 234.

"voluntarily." Former Presiding Judge McCormick's dissenting opinion in *Teer* claimed that by not defining the term "voluntarily," the Legislature intended for it to be construed according to its "broadest possible understanding." *Teer*, 923 S.W.2d at 21 (McCormick, P.J., dissenting). After examining various dictionary definitions of "voluntary," [12] the dissenting opinion in *Teer* decided that the "broadest possible understanding" of "voluntary" meant that an act is voluntary "only if it was the spontaneous product of the actor's free will, uninfluenced by another's persuasion, coercion, or solicitation." *Id.* This is the definition of "voluntarily" adopted by the Court of Appeals in this case. *Brown*, slip op. at 3–5, at —— – ——.

■ This broad interpretation of "voluntarily," however, is not consistent with the "plain" language of Section 20.04(d) which provides an incentive to kidnappers to release their kidnap victims. The dissenting opinion in *Teer* addressed this by noting that, even under a broad interpretation of "voluntary," a kidnapper still has an incentive to release his victim because it is still better to be sentenced as a first degree felon for aggravated kidnapping than it is to be sentenced as a capital murderer. *See Teer*, 923 S.W.2d at 21 (McCormick, P.J., dissenting).[13] That may be so. But sentencing a kidnapper as a second degree felon (if he releases his victim) provides an additional incentive to release the victim. Such would not be present under a broad interpretation of "voluntarily."

We also note that adopting a broad interpretation of "voluntarily" in Section 20.04(d) would be problematical if carried over to other "voluntariness" situations. For example under a broad interpretation

of "voluntarily" involving a parties situation, an actual triggerman murder defendant might successfully claim that he acted involuntarily and escape responsibility by arguing that he pulled the trigger under the influence of "another's persuasion." *See Brown*, slip op. at 5, at —— (act is voluntary "only if it was the spontaneous product of the actor's free will, uninfluenced by another's persuasion"). We have also declined to hold that a defendant's confession is involuntary simply because the police tricked him into confessing. *See Green v. State*, 934 S.W.2d 92, 99–100 (Tex.Cr.App.1996), cert. denied, 520 U.S. 1200, 117 S.Ct. 1561, 137 L.Ed.2d 707 (1997) (police making untrue statements "to induce [the defendant] to confess" did not render the defendant's confession involuntary). We also note that in *Alford v. State* this Court adopted a narrow interpretation of the legislatively undefined term "voluntarily" in Section 6.01(a), Texas Penal Code, which provides that a person commits an offense "only if he voluntarily engages in conduct." *See Alford v. State*, 866 S.W.2d 619, 624 (Tex.Cr.App.1993) ("voluntarily" as used in Section 6.01(a) means "the absence of an accidental act, omission or possession").

■ We also reject the contention that we should construe the legislatively undefined term "voluntarily" in Section 20.04(d) in accordance with the legislatively defined term "voluntary" in Texas Penal Code, Section 15.04, which contains the "general renunciation defense." *See* Texas Penal Code, Section 15.04(c)(1), ("Renunciation is not voluntary if it is motivated in whole or in part ... by circumstances not present or apparent at the inception of the actor's course of conduct that increase the proba-

---

12. See Footnote 3.

13. This assumes that this "kidnapper would engage in a rational cost benefit analysis."

*See Teer*, 923 S.W.2d at 20 (McCormick, P.J., dissenting).

bility of detection or apprehension or that make more difficult the accomplishment of the objective"). This would be inconsistent with Section 20.04(d)'s purpose of providing an incentive to kidnappers to release their kidnap victims, because a kidnapper who releases his victim under circumstances not present or apparent at the time of the kidnapping would not have the incentive provided in Section 20.04(d) to release his captive. *See Alford,* 866 S.W.2d at 623 (when susceptible to more than one construction, statute should be interpreted "so as to secure the purpose or benefit intended").

 We reject a broad interpretation in favor of a narrow interpretation of "voluntarily" in Section 20.04(d) such as the absence "of rescue by the police [or others] or escape by the [kidnap] victim." *See* Comments to Model Penal Code, Section 212.1, at pages 233–34 (requirement that release be "voluntary" means that "rescue by the police or escape by the victim" will not reduce the punishment level of the offense). A narrow rather than a broad interpretation of "voluntarily" in Section 20.04(d) is likely to effectuate the legislative purpose of Section 20.04(d) of encouraging kidnappers to release their kidnap victims. *See Alford,* 866 S.W.2d at 623 (when susceptible to more than one construction, statute should be interpreted "so as to secure the purpose or benefit intended"). We, therefore, hold that the Court of Appeals erred to apply a broad interpretation of "voluntarily" in Section 20.04(d).

The judgment of the Court of Appeals is reversed and the cause is remanded there for proceedings consistent with this opinion.

MEYERS, J., filed a concurring opinion in which COCHRAN, J., joined.

MEYERS, J., filed a concurring opinion joined by COCHRAN, J.

I agree with the majority that a narrow construction of the word "voluntarily" as used in Texas Penal Code section 20.04(d) encourages kidnappers to safely release their victims and more closely reflects the intent of the legislature. The inclusion of the defendant's subjective moral culpability or free will in the definition of the term "voluntarily" would lead to an analysis that this Court does not normally undertake when discussing voluntariness.

We consider whether a defendant's actions were voluntary in the context of confessions, consents to search, waiver of rights, and guilty pleas. In each of those situations, we consider only whether the defendant acted without coercion, threat, duress, or force. We do not consider the defendant's subjective motives in those contexts, nor should we here.

I prefer an objective analysis of voluntariness. If we look at a defendant's actions objectively—whether it be his release of a victim, his confession, his consent to search, the waiver of his rights, or his guilty plea—and find no overt reason for his actions, then the actions should be considered voluntary. This is clearly not the case when a defendant is being pursued or coerced by the police, has a gun to his head, when a victim escapes, a third party intervenes, or ransom is paid. In each of those situations, the defendant's reason for releasing his victim is obvious and the presence of such a clear reason for the release indicates that it was not a voluntary act. However, deception, misrepresentations, inducements, trickery, and ruses by the victim do not constitute coercion and do not make the defendant's conduct involuntary.

A breakdown of the mitigation issue that adds a subjective element to the definition of "voluntarily" is not necessary. When a

defendant releases his victim in a safe place there is no need to delve into his mind or attempt to examine his subjective intent or subconscious motives. We do not need to know whether he always intended to release the victim and was acting according to his plan, he had a moral awakening, or he simply changed his mind. Nor do we need to know whether something the victim said is what influenced his decision. The point is that the defendant decided, for reasons not outwardly obvious, to release the victim in a safe place. This uncoerced decision is what makes the release voluntary.

The prosecution in this case argued that the defendant only took the victim to the hospital because he was protecting himself. However, the fact that the defendant's motive was to protect himself rather than to protect his victim does not mean that he wasn't acting voluntarily when he released her. The reason for having a mitigation statute and for offering a lighter sentence is to use the basic human characteristic of self-preservation to induce release for the benefit of the victim. Perhaps the kidnapper read section 20.04(d) after he kidnapped his victim and decided that because he wanted to spend less time in jail he would release his victim in a safe place. Does the fact that his motive for the release was simply to get a shorter prison sentence and not due to a genuine concern for the welfare of his victim make the release involuntary? Surely not. However a broad definition of "voluntary" would seem to say that due to the inducement and the lack of a moral awakening, the release is not mitigating.

In the context of Texas Penal Code section 6.01(a), we have said that voluntariness of conduct is separate from the issue of culpable mental states. *Brown v. State,* 89 S.W.3d 630, 633 (Tex.Crim.App.2002); *Adanandus v. State,* 866 S.W.2d 210, 230 (Tex.Crim.App.1993); *Alvarado v. State,* 704 S.W.2d 36, 38 (Tex.Crim.App.1985). This applies equally well to the voluntariness of release under the kidnapping statute. The separation of the voluntariness of conduct from the mental state or motivation behind the conduct indicates that it is not necessary for a defendant to have a sudden realization of right and wrong to make the act of releasing a victim voluntary.

This is not to say that anytime the victim is no longer in the physical custody of the defendant the victim has been voluntarily released. There is a difference between abandonment and a voluntary release. This is the purpose of the statute's requirement that the victim be released in a safe place. "Dumping" a victim does not constitute releasing. Additionally, a bound and gagged victim who has been left somewhere by the kidnapper cannot be considered to have been voluntarily released in a safe place.

Because an objective analysis of appellant's conduct indicates that he voluntarily released his victim in a safe place, I concur with the majority's decision to reverse the judgment of the Court of Appeals.