

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

## NO. PD-1662-13

### CHARLES E. BUTCHER, II, Appellant

### v.

### THE STATE OF TEXAS

### ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW
### FROM THE ELEVENTH COURT OF APPEALS
### TRAVIS COUNTY

**JOHNSON, J., filed a dissenting opinion.**

## D I S S E N T I N G   O P I N I O N

I respectfully dissent. I believe that the court of appeals incorrectly applied the standard of review for factual sufficiency in this aggravated kidnapping case. The term "safe place" is not defined in the statute and is open to interpretation depending on the facts of each case. Therefore, the court should have considered the legislative history and intent of the safe-release defense. The critical question in this case is whether appellant did what the legislature intended the safe-release defense to encourage him to do. Because the lower court did not answer this question, I would reverse and remand to the court of appeals to apply the

correct standard.

**I.**

Appellant abducted a nine-year-old girl, J.G., at knife point while she was walking down the driveway from her condominium complex to the school bus stop early in the morning. J.G. walked to and from that bus stop every day, which was at the end of the private drive leading to the complex. There was a "park-like setting" on one side of the drive and an under-construction shopping center on the other. The drive was an eighth to a quarter of a mile long and it took J.G. five to ten minutes to walk down the driveway every day. The drive did not normally have much traffic and a police officer described the area as middle class with no reputation for violent crime.

After threatening her with the knife to not scream, appellant put J.G. in his truck and she tried to use her cell phone to call for help. Appellant took the phone and removed the battery. He drove J.G. to his apartment, where he tied her hands and placed her inside of a bedroom closet with a television. J.G. spent the day in the closet watching "SpongeBob" and appellant twice fed her when she said that she was hungry. Later in the afternoon, J.G. told appellant that her mother would be angry if she did not come home soon. As a result, appellant drove her to the apartments next to the condominium complex where she lived. J.G. told appellant that she did not know how to get home from that location, so he drove her back to the same private drive from which he initially took her, and she walked home.

On the way up the drive, J.G. passed a mailman and asked for the time, but she did

not ask him for help. She went back to her condo but she did not have her cell phone and her condo did not have a landline phone. J.G., characterized by her mother as "independent" and "capable," then walked to a neighbor's condo and asked to use the phone, but she did not suggest that she needed help. J.G. called her mother, who at that time was at the police station.

Appellant was charged with aggravated kidnapping, a first-degree felony. At trial, appellant raised the affirmative defense of safe release, which would reduce the offense to a second-degree felony. The jury rejected appellant's defense and convicted him of first-degree aggravated kidnapping. The jury then found the enhancement paragraphs to be true and assessed punishment at life imprisonment and a $10,000 fine.

On appeal, appellant argued that the evidence was legally and factually insufficient to support the jury's rejection of his safe-release defense. The Eleventh Court of Appeals affirmed and held that the evidence was both legally and factually sufficient to support the verdict because (1) J.G. was released at the same location from which she was kidnapped, (2) the location of release was desolate, (3) appellant took J.G.'s cell phone, (4) J.G. was nine years old and was returned to the "middle of a street," and (5) she returned to an empty house.[1]

## II.

When reviewing a jury's rejection of an affirmative defense, courts apply both a legal-

---

[1] *Butcher v. State*, No. 11-11-00288-CR, 2013 WL 5891603, at *9 (Tex. App.–Eastland Oct. 31, 2013) (mem. op.) (not designated for publication).

and factual-sufficiency standard.[2] First, applying the legal-sufficiency standard, we determine if more than a mere scintilla of evidence supported the jury's finding that the defendant did not release the complainant in a safe place.[3] Furthermore, we disregard all evidence contrary to the jury's finding unless a reasonable factfinder could not disregard such evidence.[4] If no evidence supports the jury's finding, then we search the record to determine whether the defendant established his affirmative defense as a matter of law.[5]

Second, as to factual sufficiency, although this Court does not have jurisdiction to "pass upon the weight and preponderance of the evidence or 'unfind' a vital fact," this Court may determine whether the courts of appeals applied the proper standard of review.[6] Evidence may be factually insufficient in two ways: after review in a neutral light, "(a) the evidence is factually insufficient to support a finding of a vital fact, or (b) the finding of a vital fact is so contrary to the great weight and preponderance of the evidence as to be clearly

---

[2] *Matlock v. State*, 392 S.W.3d 662, 667 (Tex. Crim. App. 2013) (noting that affirmative defenses are reviewed under both legal- and factual-sufficiency even after this Court abolished factual-sufficiency review for criminal convictions in *Brooks v. State*, 323 S.W.3d 893 (Tex. Crim. App. 2010)).

[3] *See id.* at 669 (applying factual sufficiency to the affirmative defense of inability to pay child support).

[4] *See City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005) (modifying the legal-sufficiency standard of review to consider evidence contrary to the jury's finding only if a reasonable factfinder could not ignore it).

[5] *See Sterner v. Marathon Oil Co.*, 767 S.W.2d 686, 690 (Tex. 1989).

[6] *Combs v. State*, 643 S.W.2d 709, 716 (Tex. Crim. App. 1982) (quoting *Martin v. State*, 605 S.W.2d 259, 261 (Tex. Crim. App. 1980)); *see also* Tex. Const. art. V, § 6 ("the decision of [the courts of appeals] shall be conclusive on all questions of fact brought before them on appeal or error").

wrong."[7] The first type of factual insufficiency occurs when the evidence is "simply too weak by itself to support a rational finding."[8] The second type occurs when there is evidence on both sides of the issue, some supporting and some weighing against the verdict, but–after balancing all of the evidence–the verdict is plainly wrong or manifestly unjust.[9]

In this case, the court of appeals applied the rule for the second type of factual insufficiency–whether the verdict was plainly wrong or manifestly unjust. The court used a factors test and held that the jury's rejection of appellant's affirmative defense was not so against the great weight of the evidence as to be manifestly unjust.[10] While the court did consider the facts weighing both for and against the safe-release defense, it did not analyze § 20.04–the pertinent kidnapping statute–and did not consider legislative intent.

**III.**

Section 20.04(d) of the Texas Penal Code states that aggravated kidnapping is a first-degree felony unless the defendant establishes by a preponderance of the evidence that he "voluntarily released the victim in a safe place."[11] If the safe-release defense is proven, the

---

[7] *See Goodman v. State*, 66 S.W.3d 283, 285 (Tex. Crim. App. 2001) (quoting Robert W. Calvert, *"No Evidence" and "Insufficient Evidence" Points of Error*, 38 TEX. L. REV. 361, 366 (1960)).

[8] *Goodman*, 66 S.W.3d at 285.

[9] *Id*. at 286. ("A reviewing court can only attribute the verdict to bias, irrationality, or some other peculiarity.").

[10] *Butcher*, 2013 WL 5891603, at *8 (applying "safe place" factors elucidated in *Rodriguez-Flores v. State*, 351 S.W.3d 612, 636 (Tex. App.–Austin 2011, pet. ref'd)).

[11] TEX. PENAL CODE § 20.04(d) (2011).

offense is lowered to a second-degree felony. The term "safe place" is not defined in the statute. Because the term is not defined and because it is susceptible to different meanings, we must look to the legislative history and extra-textual sources to determine the legislative intent behind the safe-release affirmative defense.[12]

We first discussed the history behind § 20.04 at length in *Brown v. State*.[13] In *Brown*, we noted that, in 1931, kidnapping for extortion or ransom was punishable by the death penalty unless the kidnapper returned the victim without serious bodily injury.[14] In 1933, the legislature removed the portion of the statute reducing the maximum punishment when the victim was returned without serious injury because it determined the provision was insufficient to deter would-be kidnappers.[15]

In response to the Charles Lindbergh, Jr., abduction and murder in 1932, many jurisdictions, like Texas, increased the penalty for kidnapping or "maintained a single broad offense punishable in terms suited to the most heinous kinds of conduct covered by it."[16] The Model Penal Code's kidnapping statute, § 212.1, was drafted to address some of the wild

---

[12] *See Jordan v. State*, 36 S.W.3d 871, 873 (Tex. Crim. App. 2001).

[13] *Brown v. State*, 98 S.W.3d 180 (Tex. Crim. App. 2003).

[14] *Id*. at 184 (citing Acts 1931, 42nd Leg., p. 12, ch. 12, H.B. 244 codified as former Texas Penal Code, Article 1177a).

[15] *Id*. (citing Acts 1933, 43rd Leg., p. 51, ch. 17, S.B. 36).

[16] MODEL PENAL CODE § 212.1 cmt. 1 at 215-16 (Official 1962 Draft and Revised Comments) (The American Law Institute 1980) (noting that the abduction and murder of aviator Charles Lindbergh's infant son prompted nationwide legislative action).

inconsistencies in the punishment of kidnapping between states.[17] The rationale behind the MPC statute was to punish the varying degrees of kidnapping appropriately.[18] The punishment should fit the crime.

The MPC commentary specifically notes that the "most difficult grading question is when kidnapping should be graded as a felony of the first degree" because most jurisdictions authorize life imprisonment for this offense.[19] The justification for such harsh punishment is the life-endangering nature of the offense. Therefore, the MPC statute was drafted on the premise that, if the most severe punishment is triggered once the victim has been harmed in some way, there must be an incentive for the kidnapper not to cause further harm.[20] The MPC, then, mandates that "while causing harm to the victim will aggravate the offense . . . the actor may still escape the extreme sanctions of a first-degree felony by preserving the life of the victim and voluntarily releasing him alive and in a safe place prior to trial."[21] If the

---

[17] *Id*. at 218-20. For example, the same behavior that would constitute misdemeanor false imprisonment in California, and thus be punishable by up to one year of incarceration, would constitute kidnapping and carry a discretionary death sentence in New York. *Id.* at 218-19.

[18] *Id*. § 212.1 cmt. 2 at 220.

[19] *Id*. § 212.1 cmt. 5 at 232-33.

[20] *Id*. at 233.

[21] *Id*. ("The effect of this scheme is to provide at every state an incentive to release the victim and not to inflict any further harm."); *see also* Note, *A Rationale of the Law of Kidnapping*, 53 COLUM. L. REV. 540, 550 (1953) (criticizing kidnapping statutes for failing to differentiate between intentional and accidental harm and arguing that sentences must be reduced to provide incentive to keep the victim alive).

victim is released, the offense is reduced to a second-degree felony.[22]

In 1973, the Texas Legislature reformulated the kidnapping statute and patterned it after Model Penal Code § 212.1.[23] The 1974 Texas statute provided that aggravated kidnapping "is a felony of the first degree unless the actor voluntarily releases the victim alive and in a safe place, in which event it is a felony of the second degree."[24] While the legislature did not define "safe place," the committee did discuss its application and noted that leaving a victim outside in the snow or tied to railroad tracks would not reduce the offense to a second-degree felony.[25] Like the MPC, § 20.04(b) was drafted with the primary concern being the victim's safety, and thus it provides incentive for the kidnapper to let the victim go.[26] In 1993, the legislature amended § 20.04 to make "voluntary release in a safe place" an affirmative defense that the defendant could present during the punishment phase of trial.[27]

---

[22] MODEL PENAL CODE § 212.1 (Official 1962 Draft and Revised Comments) (The American Law Institute 1980).

[23] *See Brown*, 98 S.W.3d at 185 (citing Practice Commentary to Section 20.04, 259-61 (1989)).

[24] TEX. PENAL CODE § 20.04(b) (1974).

[25] *See Brown*, 98 S.W.3d at 184; *see, e.g.,* Hearings on S.B. 34 before the Senate Criminal Jurisprudence Subcommittee, 63rd Leg., R.S., on Feb. 20, 1973; Hearings on S.B. 34 before the Senate Criminal Jurisprudence Committee, 63rd Leg., R.S., on May 8, 1973.

[26] *Id*. at 185 ("The 1973 Practice Commentary to Section 20.04 also states that former Section 20.04(b) reflected 'the Model code's overriding concern for the victim's safety' because like 'prior art. 1177a before its amendment in 1933, [former] Section 20.04(b) encourages the victim's safe return by reducing the penalty one grade if he is released alive and in a safe place.'").

[27] TEX. PENAL CODE § 20.04(c) (1993) (also removing the word "alive" from the defense).

**IV.**

A factual-sufficiency review of the rejection of a safe-release defense must include both a review of the facts of the case and consideration of the reason the legislature included such a defense in the kidnapping statute. The legislature did not define "safe place" and the term is ambiguous, rendering an analysis of the legislative history necessary. Because the question of whether a place is "safe" is factually intensive, courts should take a case-by-case approach.[28]

In this case, the court of appeals applied a factors test to determine whether the jury's rejection of the safe-release defense was supported by legally and factually sufficient evidence: "[1] the remoteness of the location, [2] the proximity of persons who could aid or assist the victim, [3] the time of day, [4] the climatic conditions, [5] the victim's condition, [6] the character of the location or surrounding neighborhood, and [7] the victim's familiarity with the location or neighborhood."[29] While these factors may be useful in conducting sufficiency reviews, none are decisive, and they should not be applied in a rote manner. Furthermore, the purpose behind the safe-release affirmative defense is the most important consideration: Did the defendant affirmatively choose to release his victim and in a manner

---

[28] *See Wright v. State*, 571 S.W.2d 24, 25 (Tex. Crim. App. 1978); *State v. Henderson*, No. A12-1888, 2013 WL 5777886, at *3 (Minn. Ct. App. Oct. 28, 2013) (not designated for publication) (noting that Minnesota's kidnapping statute does not define "safe place" and that the jurors were instructed to rely on their own experience and common sense).

[29] *Rodriguez-Flores v. State*, 351 S.W.3d 612, 636 (Tex. App.–Austin 2011, pet. ref'd); *see also Nolan v. State*, 102 S.W.3d 231, 238 (Tex. App.–Houston [14th Dist.] 2003, pet. ref'd); *Lavarry v. State*, 936 S.W.2d 690, 696 (Tex. App.–Dallas 1996, pet. dism'd).

that was not likely to cause further harm?

The court of appeals should have analyzed whether appellant's actions complied with the legislative intent behind the safe-release defense. Did appellant choose to release J.G. and not do further harm? Looking to the facts of this case, several indicate that appellant released J.G. in a safe place:

- J.G. was released at the location where every day she walked to by herself, waited for the bus by herself, and was dropped off by the bus driver.[30]

- The location of release was a short walk from J.G.'s home, a walk that she took every day.[31]

- Appellant released her during daylight hours at about the same time she would normally be returning from school.

- J.G. was not physically injured.[32]

- Appellant released J.G. at the driveway to her complex, and not down the road, because she told appellant that she knew how to get home from that driveway. Appellant obeyed her.

- The driveway did not have heavy traffic.

- J.G. passed a mailman and did not ask for help but testified that she would have, had she needed help.

- J.G. was able to call her mother from a neighbor's phone, and J.G. did not tell the

---

[30] *See Huff v. State*, 423 S.W.3d 608, 611 (Ark. 2012) (stating that the victim's familiarity with the location of release is a factor to be considered but is not conclusive).

[31] *See Thornburg v. State*, 699 S.W.2d 918, 921 (Tex. App.–Houston [1st Dist.] 1985, no pet.) (10-year-old victim not released in a safe place when left alone at night in an unfamiliar neighborhood 25 miles from home).

[32] *See State v. Stewart*, 573 P.2d 1138, 1147 (Mont. 1977) (airman not released in safe place when left in his barracks when injured, bound, gagged, and with two of defendant's accomplices still present).

neighbor that she needed help.[33]

- A police officer testified that the neighborhood was not known for violent crime.

However, there are also facts that arguably show that J.G. was not released in a safe place:

- J.G. was returned to the same place that she was abducted from.[34]

- Appellant took J.G.'s cell phone and did not return it.[35]

- J.G. was nine years old and was returned to a private driveway alone.[36]

- J.G. returned to an empty house that did not have a phone for her to call for help.[37]

- The driveway was "desolate" in that it was surrounded by a park and an unfinished commercial development.[38]

These latter facts demonstrate that the jury's rejection of the safe-release defense was

---

[33] *See State v. Wright*, 990 N.E.2d 615, 619 (Ohio Ct. App. 2013) (location was safe when victim released in the parking lot of her apartment complex within walking distance of a friend's apartment).

[34] *Compare Storr v. State*, 126 S.W.3d 647, 652-53 (Tex. App.–Houston [14th Dist.] 2004, pet. ref'd) (trial counsel ineffective for failing to seek instruction on safe-release defense when "the evidence conclusively establishes that appellant voluntarily released the complainant in a safe place"; defendant released complainant in complainant's car at a post office, the site of abduction) *with Howard v. State*, No. 12-08-00420-CR, 2011 WL 1390002, at *3 (Tex. App.–Tyler Apr. 6, 2011, no pet.) (not designated for publication) (woman abducted from and returned to restaurant where she worked not left in safe place because she was injured and traumatized from sexual assault).

[35] *See State v. White*, 492 S.E.2d 48, 53 (N.C. Ct. App. 1997) (holding victim released in safe place when taken to a motel and given change to use a pay phone).

[36] *See State v. Sakobie*, 579 S.E.2d 125, 130 (N.C. Ct. App. 2003) (5-year-old victim was not released in a safe place when he was left alone on the doorstep of a mobile home when the victim was unfamiliar with the location and the defendant did not know whether anyone, much less the victim's mother, was inside).

[37] *See Wiley v. State*, 820 S.W.2d 401, 411 (Tex. App.–Beaumont 1991, no pet.) (holding that the victim must be released in a place where aid is readily available).

[38] *See Wray v. State*, Nos. 03-01-00626-CR, 03-01-00627-CR, 2002 WL 31525288, at *3 (Tex. App.–Austin Nov. 15, 2002, no pet.) (not designated for publication) (victim not released in safe place when left barefoot, injured, and intoxicated in the middle of the night "out in the country" populated only with scattered trailer houses and a bait shop).

based upon legally sufficient evidence.[39] There is some evidence to support the jury's finding. However, some evidence does not equate to factually sufficient evidence. A proper factual-sufficiency review would include consideration of the purpose of the safe-release defense and whether appellant acted in accord with that purpose.

The court of appeals reviewed many factors in conducting its sufficiency review, which was appropriate, but it did not analyze § 20.04 itself, and it did not consider whether appellant complied with the legislative intent. Appellant kidnapped a nine-year-old girl at knifepoint, which was a violent crime. However, appellant did not physically or sexually abuse the child, and he decided to take her back home. In fact, he took her to the very place that she indicated was familiar to her and from which she could easily get home by herself and without further harm. It would seem, at least on the surface, that appellant acted precisely in accord with the purpose and rationale of the safe-release affirmative defense.

The bottom line is, did appellant do what the legislature intended § 20.04(d) to encourage kidnappers to do? Did he affirmatively choose to "release the victim and not . . . inflict any further harm?"[40] Because the lower court did not answer this question, I would reverse and remand to the court of appeals to apply the correct factual-sufficiency standard and consider the purpose of the safe-release defense. Therefore, I respectfully dissent.

---

[39] *See Matlock v. State*, 392 S.W.3d 662, 673 (Tex. Crim. App. 2013) (noting that when there is some evidence to support the jury's rejection of the defendant's affirmative defense, there is no need to determine whether the affirmative defense was established as a matter of law).

[40] MODEL PENAL CODE § 212.1 cmt. 5 at 233 (Official 1962 Draft and Revised Comments) (The American Law Institute 1980).

Filed:  January 28, 2015
Publish