

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

### NO. PD-1662-13

### CHARLES E. BUTCHER, II, Appellant

### v.

### THE STATE OF TEXAS

### ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW
### FROM THE ELEVENTH COURT OF APPEALS
### TRAVIS COUNTY

**NEWELL, J., filed a concurring opinion.**

## O P I N I O N

I join the majority opinion, but I write separately to address my concern that too much focus upon the need to preserve the incentive nature of the statute obscures the determination of whether a particular location is "safe."

As both the majority and the dissenting opinions demonstrate, it is exceedingly difficult to come up with a "one-size-fits-all" definition for what constitutes a safe place. Consequently, this Court has settled upon the dynamic and non-exhaustive list of factors set

out in *Williams v. State* to help guide courts of appeals on a case-by-case basis when determining if the circumstances suggest that a particular location was "safe." While this approach might result in a more malleable definition of "safe," courts of appeals have used it successfully for many years without a great deal of conflict or confusion. *See, e.g., Woods v. State*, 301 S.W.3d 327, 331-32 (Tex. App.–Houston [14th Dist.] 2009, pet. ref'd.) (holding evidence factually sufficient after examining *Williams* factors); *Lavarry v. State*, 936 S.W.2d 690, 696 (Tex. App.–Dallas 1996, pet. ref'd.) (same); *Rodriguez v. State*, 766 S.W.2d 360, 361 (Tex. App.–Texarkana 1989, pet. ref'd.) (same); *Williams v. State*, 718 S.W.2d 772, 774 (Tex. App.–Corpus Christi 1986), *aff'd in part and rev'd in part on other grounds,* 851 S.W.2d 282 (Tex. Crim. App. 1993).

But whatever else a safe place might mean, it must mean a safe place for the victim; the inquiry does not include whether a location is safe for the defendant. The legislature's primary concern when drafting this statute was the victim's safety from both actual harm and the risk of harm. *Brown v. State*, 98 S.W.3d 180, 185 (Tex. Crim. App. 2003) (noting that the primary concern for the statute was the victim's safety and considering examples such as a victim tied to railroad tracks or being left in twenty-degree weather in the snow). The legislative history does not reveal any consideration of a sliding scale of acceptable risk for the victim so that a defendant might be incentivized to release his captive.

Rather than qualify the term "safe place," the legislature set the incentive for defendants at a reduction in the range of punishment. TEX. PENAL CODE ANN. § 20.04 (d)

(West 2013); *see also Brown*, 98 S.W.3d at 185 ("The 1973 Practice Commentary to Section 20.04 also states that former Section 20.04(b) reflected 'the Model Code's overriding concern for the victim's safety' because like 'prior art. 1177a before its amendment in 1933, [former] Section 20.04(b) encourages the victims' safe return by reducing the penalty one grade if he is released alive and in a safe place.'"). The statute does not guarantee immunity from arrest or prosecution. *Cf.* TEX. PENAL CODE ANN. § 22.041(h) (West 2013) ("It is an exception to the application of this section that the actor voluntarily delivered the child to a designated emergency infant care provider under Section 262.302, Family Code."). It is true that the legislature passed the statute to encourage the safe release of kidnap victims, but that incentive should not be used as an undetectable extension charm on the definition of "safe."[1] If this statutory scheme ultimately provides too little encouragement to overcome a defendant's fear of apprehension such that he will seek to take advantage of this statute, this Court should not be required to sweeten the deal by adjusting its standard for defining a safe place.

As far as disincentive is concerned, setting a standard that focuses solely upon the victim's safe return is no more onerous than the statutory renunciation defense, and in some ways it is less so. TEX. PENAL CODE ANN. § 15.04(a) (West 2013) ("It is an affirmative defense to prosecution under Section 15.01 that under circumstances manifesting a voluntary and complete renunciation of his criminal objective the actor avoided commission of the

---

[1] J.K. ROWLING, HARRY POTTER AND THE DEATHLY HALLOWS (Arthur A. Levine 2009).

offense attempted by abandoning his criminal conduct or, if abandonment was insufficient to avoid commission of the offense, by taking further affirmative action that prevented the commission."). Section 15.04 not only requires that a defendant renounce his criminal objective out of genuine repentance or change of heart, it also requires the defendant to take affirmative steps to prevent the commission of an offense. *Id.; see also* Practice Commentary to § 15.04 (Vernon 1974) ("Subsection (c) limits the renunciation defense to those changes in the actor's purpose that evidence repentance or change of heart."). In contrast, Section 20.04 does not require a showing of the defendant's motive in releasing the victim or that he take affirmative steps to undo the consequences of his conduct. TEX. PENAL CODE ANN. § 20.04(d) (West 2013); *see also Brown,* 98 S.W.3d at 188 (Meyers, J., concurring) (noting that voluntary release does not consider the defendant's subjective motives). No one has yet complained that Section 15.04 is a dead letter, so it seems premature to write the obituary for Section 20.04(d) based upon this one opinion.

Section 20.04(d) simply requires a showing that the defendant released the victim at a location where the victim was secure or protected from both harm and the risk of harm. *See* WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1998 (2002) (defining "safe" as "secure from threat of danger, harm, or loss"). There must be some overt and affirmative act that brings home to the victim that he or she has been fully released from captivity in a place and manner which realistically conveyed to the victim that he or she was then freed from captivity and in circumstances and surroundings wherein aid was readily available. *See, e.g.,*

*Harrell v. State*, 65 S.W.3d 768, 772 (Tex. App.–Houston [14th Dist.] 2001, pet. ref'd.).

While this is certainly a close case, I agree with the majority that the jury's rejection of appellant's claim that he had done so was not clearly wrong or manifestly unjust.

      With these observations, I join the majority.

Filed:  January 28, 2015
Publish