

# NUMBER 13-22-00338-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

---

**BEN AREVALO III,**                                              **Appellant,**

**v.**

**THE STATE OF TEXAS,**                                           **Appellee.**

---

### On appeal from the 85th District Court
### of Brazos County, Texas.

---

## MEMORANDUM OPINION

### Before Chief Justice Contreras and Justices Silva and Peña
### Memorandum Opinion by Justice Peña

Appellant Ben Arevalo III appeals his conviction for aggravated kidnapping, a first-degree felony. *See* TEX. PENAL CODE ANN. § 20.04. A jury found Arevalo guilty, and the trial court sentenced him to thirty-five years' imprisonment in accordance with the jury's assessment of punishment. In one issue, Arevalo argues the trial court erred in denying

a mitigating instruction on voluntary and safe release. *See id.* § 20.04(d). We affirm as modified.[1]

## I. BACKGROUND

A grand jury returned an indictment charging Arevalo with the aggravated kidnapping of his former girlfriend Victoria Montoya.[2] Arevalo pleaded not guilty, and the case proceeded to a jury trial, during which the following evidence was adduced.

Montoya and Arevalo were in a romantic relationship that ended after approximately twenty-five years. Montoya then began dating Anthony Garcia. Arevalo was upset with the breakup and Montoya's relationship with Garcia, whom Arevalo had grown up with. Arevalo threatened to make Montoya's and Garcia's lives miserable. Arevalo showed up at Montoya's place of employment and home on multiple occasions, attempting to reconcile. Montoya told Arevalo to stop contacting her, and Arevalo threatened to kill himself. One morning, Arevalo arrived at Montoya's home in Brazos County as she was leaving for work, demanding to talk. When Montoya refused, Arevalo said, "Don't make me do something you're going to regret." Arevalo attempted to prevent Montoya from leaving, and he told her that he had a gun. As Montoya got into the driver's seat of her car, Arevalo entered the vehicle on the passenger side. Montoya started driving toward work, hoping Arevalo would exit the car en route. Eventually, Arevalo demanded to drive. At that point, Montoya stopped at a convenience store, where she

---

[1] This case is before the Court on transfer from the Tenth Court of Appeals pursuant to a docket equalization order issued by the Supreme Court of Texas. *See* TEX. GOV'T CODE ANN. § 73.001.

[2] By the time of trial, Montoya changed her name to Victoria Garcia due to her marriage. We will refer to her as Montoya to avoid confusion with other witnesses who share her current surname.

The indictment also charged Arevalo with unlawful possession of a firearm by a felon. *See* TEX. PENAL CODE ANN. § 46.04. The trial court severed that charge and tried it separately, and it is not at issue in this appeal.

ran inside and told the clerk to call 9-1-1 because she was scared. Arevalo entered seconds later and forced Montoya back to her vehicle. While Arevalo was pushing her into the vehicle, Montoya noticed that he was pointing a gun to her side. At that moment, Montoya described being scared and in a panic. The store clerk immediately called 9-1-1.

As Arevalo was driving, Montoya's best friend and coworker, Ashley Key, called Montoya because she had not shown up to work. Arevalo answered the phone, which disturbed Key as she knew the two had broken up and Montoya was dating Garcia. After arguing with Arevalo, Key became concerned and called 9-1-1 to report the situation.

Arevalo stopped the vehicle on two occasions—first, to smoke a cigarette, and then to buy a drink for Montoya. At one of the stops, Arevalo wrapped his gun in a shirt and placed it in the trunk. At each stop, Montoya remained in the car, stating that she was "paralyzed with fear." While alone, Montoya texted Key her location and informed Key that Arevalo kidnapped her and that he had a gun. Key called 9-1-1 again to share this information.

At some point during the drive, Arevalo expressed a desire to return to Montoya's home so they could talk. Montoya protested because her daughter was at the house, and she feared Arevalo might harm her or her daughter. Arevalo relented and began driving toward his own house. Meanwhile, John Pollock, the chief deputy for the Burleson County Sheriff's Office, received notice of an active kidnapping. Chief Pollock learned that a ping from Montoya's cell phone indicated she was entering Burleson County. Chief Pollock and several deputies went to the area where they believed Montoya's vehicle would soon be. Spotting the vehicle, a sheriff's deputy accompanying Chief Pollock initiated a traffic

3

stop. Arevalo pulled over, and the deputies instructed Arevalo to exit the car. Arevalo complied, and the deputies placed him under arrest. The deputies searched the vehicle and discovered a firearm in the trunk.

The jury returned a guilty verdict. At the punishment hearing, Arevalo requested a jury instruction pursuant to § 20.04(d) of the penal code, contending that the evidence showed that he voluntarily released the victim in a safe place. *See id.* The defense, if proven, would reduce the offense to a second-degree felony. *See id.* The trial court denied the requested instruction. Following the punishment hearing, the jury assessed punishment as stated above. This appeal followed.

## II. DISCUSSION

### A. Standard of Review & Applicable Law

When presented with an argument that a trial court committed jury-charge error, the reviewing court must conduct a two-step inquiry: (1) did an error occur; and (2) if so, did it cause harm that rises to the level of reversible error? *Ngo v. State*, 175 S.W.3d 738, 743 (Tex. Crim. App. 2005). "The degree of harm necessary for reversal depends on whether the appellant preserved the error by objection." *Id.* If a defendant preserves error, then he must only show some harm to his rights. *Id.* If he fails to object, he must demonstrate egregious harm. *Id.* at 743–44.

The trial court must provide the jury with "a written charge distinctly setting forth the law applicable to the case[.]" TEX. CODE CRIM. PROC. ANN. art. 36.14. The law applicable to the case includes "statutory defenses, affirmative defenses, and justifications whenever they are raised by the evidence." *Walters v. State*, 247 S.W.3d 204, 208–09 (Tex. Crim. App. 2007). "[A] defense is supported (or raised) by the evidence

4

if there is some evidence, from any source, on each element of the defense that, if believed by the jury, would support a rational inference that that element is true." *Shaw v. State*, 243 S.W.3d 647, 657–58 (Tex. Crim. App. 2007). "[W]e do not apply the usual rule of appellate deference to trial court rulings when reviewing a trial court's decision to deny a requested defensive instruction." *Bufkin v. State*, 207 S.W.3d 779, 782 (Tex. Crim. App. 2006). Rather, "we view the evidence in the light most favorable to the defendant's requested submission." *Id.* "[A] defendant is entitled to a jury instruction on a defensive issue if it is raised by the evidence, regardless of the strength or credibility of that evidence." *See Farmer v. State*, 411 S.W.3d 901, 906 (Tex. Crim. App. 2013) (citing *Granger v. State*, 3 S.W.3d 36, 38 (Tex. Crim. App. 1999)). On the other hand, if the evidence, viewed in the light most favorable to the defendant, does not establish the defense, an instruction is not required. *See id.*

Aggravated kidnapping is a first-degree felony. TEX. PENAL CODE ANN. § 20.04(c). However, "[a]t the punishment stage of a trial, the defendant may raise the issue as to whether he voluntarily released the victim in a safe place. If the defendant proves the issue in the affirmative by a preponderance of the evidence, the offense is a felony of the second degree." *Id.* § 20.04(d). To raise the issue of "voluntary release in a safe place," there must be evidence that the defendant actually released the victim, that he released the victim "voluntarily," and that he released the victim in a safe place. *See Butcher v. State*, 454 S.W.3d 13, 19 (Tex. Crim. App. 2015); *Ballard v. State*, 193 S.W.3d 916, 919 (Tex. Crim. App. 2006); *Brown v. State*, 98 S.W.3d 180, 183–88 (Tex. Crim. App. 2003); *West v. State*, 406 S.W.3d 748, 766 (Tex. App.—Houston [14th Dist.] 2013, pet. ref'd). For there to be a "release," there must be evidence that the defendant "performed some

overt and affirmative act that brings home to the victim that he/she has been fully released from captivity." *Ex parte Chandler*, 182 S.W.3d 350, 355 n.18 (Tex. Crim. App. 2005) (quoting *Wiley v. State*, 820 S.W.2d 401, 411 (Tex. App.—Beaumont 1991, no pet.)); *see also Sadat v. State*, No. 13-17-00561-CR, 2018 WL 5289547, at *4 (Tex. App.—Corpus Christi–Edinburg Oct. 25, 2018, no pet.) (mem. op., not designated for publication). For the release to be "voluntary," there must be evidence that the release was not the result of intervention or action by others, such as rescue by the police or escape by the victim. *See Ballard*, 193 S.W.3d at 919; *Dominguez v. State*, 467 S.W.3d 521, 527–28 (Tex. App.—San Antonio 2015, pet. ref'd); *LaHood v. State*, 171 S.W.3d 613, 624–25 (Tex. App.—Houston [14th Dist.] 2005, pet. ref'd).

## B.    Analysis

Arevalo argues there was sufficient evidence to warrant a voluntary and safe release instruction because Montoya had opportunities to escape, and Arevalo had offered for the two to return to Montoya's home. The State responds that while Arevalo's actions may have afforded Montoya an opportunity to escape, there was no evidence that Arevalo affirmatively released Montoya.

Arevalo presented no evidence that he voluntarily took any affirmative action to release Montoya. This is fatal to his requested instruction. *See Ex parte Chandler*, 182 S.W.3d at 355 n.18. Arevalo's actions in leaving Montoya in an unlocked car possibly provided her a means to escape, but it did not constitute a release. *See Ballard*, 193 S.W.3d at 919 (concluding that the defendant's act of leaving the victim in her own car while he went inside a store was not a voluntary release because her actions would have constituted an escape had the victim drove away); *see also McQuitty v. State*, No. 07-12-

00079-CR, 2013 WL 765137, at *3 (Tex. App.—Amarillo Feb. 28, 2013, pet. ref'd) (mem. op., not designated for publication) (concluding that evidence of the defendant stopping a vehicle in a parking lot with the doors unlocked did not raise the issue of voluntary release). Further, the fact that Arevalo at one point expressed an intent to drive Montoya to her home for the sole purpose of continuing their "talk" in seclusion does not raise the issue of voluntary release, because he did not actually release her at her home. *See West*, 406 S.W.3d at 766 ("In order to raise the issue of voluntary release to a safe place, a defendant must offer some evidence that he actually released the victim."). Further, there is no evidence that, if they had gone to Montoya's home, she would have been free from Arevalo's captivity. *See Ex parte Chandler*, 182 S.W.3d at 355 n.18. The fact remains that Montoya was not released from captivity until she was rescued by the intervention of third parties—police officers. *See Ballard*, 193 S.W.3d at 919.

Viewing the evidence in the light most favorable to the requested instruction, we conclude that the defensive issue was not raised by the evidence. *See Farmer*, 411 S.W.3d at 906. Therefore, the trial court did not err in denying Arevalo's request for a voluntary and safe release instruction. *See id.* We deny Arevalo's sole issue.

### III.    MODIFICATION OF JUDGMENT

The judgment of conviction incorrectly states that Arevalo was convicted under Texas Penal Code § "24.04 (B)." We modify the judgment to show that Arevalo was convicted under Texas Penal Code § 20.04. *See Bigley v. State*, 865 S.W.2d 26, 27–28 (Tex. Crim. App. 1993) (noting that we have the power to modify a judgment to speak the truth when we are presented with the necessary information to do so).

7

## IV.   Conclusion

We affirm the trial court's judgment as modified.

L. ARON PEÑA
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed on the
6th day of April, 2023.